CAUSE NO. 11-00526 FILED
2011 JAN 19 PM 4:00
GARY FITZSIMMONS
DISTRICT CLERK
DALLAS CO., TEXAS

| | | |
|---|---|---|
| TNA ENTERTAINMENT, LLC | § | IN THE DISTRICT COURT |
| Plaintiff, | § § § | |
| v. | § § | DALLAS COUNTY, TEXAS DEPUTY |
| CLARENDON NATIONAL INSURANCE COMPANY | § § § | E-101st |
| Defendant. | § § | _____ JUDICIAL DISTRICT |

### PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

Plaintiff TNA Entertainment, LLC hereby files this Original Petition against Defendant Clarendon National Insurance Company, and would respectfully show the Court as follows:

### I.

### DISCOVERY LEVEL

1. TNA pleads that discovery should be conducted under Level 2, pursuant to Rule 190.3 of the Texas Rules of Civil Procedure.

### II.

### PARTIES

2. Plaintiff TNA Entertainment, LLC ("TNA") is a Delaware limited liability company with its principal place of business in Nashville, Tennessee. TNA has offices in Dallas, Texas and is authorized to do business in Texas.

3. Clarendon National Insurance Company ("Clarendon") is a New Jersey corporation with its principal place of business in New York. Clarendon is engaged in the business of insurance in Texas and can be served through C T Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

## III.

## JURISDICTION AND VENUE

4. The foregoing paragraphs are incorporated herein by reference.

5. This Court has jurisdiction over this matter because the amount in controversy, exclusive of interest and costs, exceeds this Court's minimum jurisdictional limit.

6. Venue is proper in Dallas County, Texas, pursuant to Chapter 15 of the Texas Civil Practice and Remedies Code because all or a substantial part of the events or omissions giving rise to the claim occurred in Dallas County.

## IV.

## FACTUAL BACKGROUND

7. The foregoing paragraphs are incorporated herein by reference.

8. TNA is engaged in the business of producing, arranging, staging, conducting and promoting professional wrestling events and programs throughout the world.

9. TNA is the named insured under Clarendon Policy number EGL001734-01 ("the Policy"), with limits of $1 million per occurrence for the period July 8, 2005 to July 8, 2006. The Policy was issued in Dallas, Texas. The Policy provides, among other things, that Clarendon "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." The Policy also provides that Clarendon "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages."

*The Ashenoff Counterclaim*

10. In 2008, TNA filed suit against Charles "Carlos" Ashenoff in a lawsuit styled *TNA Entertainment, LLC v. Ashenoff*, Cause No. 308CV-522-B, in the United States District Court for the Northern District of Texas. Ashenoff filed a counterclaim against TNA and various TNA officers and employees (the "TNA insureds") on July 23, 2008 ("the Ashenoff Counterclaim").

11. Ashenoff alleged that he was a professional wrestler and TNA independent contractor from January 2004 to July 2007 or later. Ashenoff further alleged, among other things, that, as a result of the TNA insureds' negligent hiring, training and/or supervision, he suffered bodily injury from the rampant use of illegal drugs. Allegedly, this bodily injury required Ashenoff to undergo hip replacement surgery during his TNA employment, and later to have a kidney transplant. Ashenoff also alleged that TNA infringed on his copyright, which he allegedly developed in August 2005, by using it on marketing materials and products, including T-shirts, without his permission. While Ashenoff did not allege when the infringement began, he alleged in his 2008 pleading that such infringement was continuing.

*Bodily Injury Allegations*

12. The Ashenoff Counterclaim alleged bodily injury that occurred during the Policy period and that falls outside the scope of any exclusion. Therefore, Clarendon has a duty to defend the suit.

13. The Policy obligates Clarendon to defend the TNA insureds against lawsuits for "'bodily injury' . . . [that] occurs during the policy period." Ashenoff's alleged bodily injury occurred, in whole or in part, between January 2004 and July 2007. Thus, it occurred during the period of the Clarendon Policy.

14. Contrary to Clarendon's position, the Participants Exclusion in the Policy does not preclude coverage. It provides: "We will not defend, investigate or afford you any insurance as is provided by this policy due to claims, action, suit or proceedings against you, from any person who is intending to or while a person is trying out for or participating in an event or performance." This exclusion does not bar coverage because some of Ashenoff's allegations of bodily injury occurred outside the wrestling ring and were wholly unrelated to an intention to try out for or participate in a wrestling event. For example, he alleged that his drug use was part of a "drug culture" at TNA that allegedly included both wrestlers and members of management, and involved cocaine and prescription drugs. Allegedly, this culture was fostered by TNA's negligent hiring, training and/or supervision. Ashenoff therefore alleged that his bodily injuries were partially due to recreational drug use in connection with an alleged "drug culture" and unrelated to his performance or intention to perform as a wrestler. Given these allegations and the requirement under Texas law to liberally construe allegations in favor of coverage, Clarendon was required to defend the TNA insureds.

*Advertising Injury Allegations*

15. In addition, the Ashenoff Counterclaim alleged an advertising injury that occurred during the Clarendon Policy period and that falls outside the scope of any exclusion. Therefore, Clarendon has a duty to defend the suit.

16. The Policy obligates Clarendon to defend the TNA insureds against lawsuits for "'personal and advertising injury' caused by an offense arising out of your business but only if the offense was committed in the 'coverage territory' during the policy period." TNA's alleged infringement of Ashenoff's copyright is an advertising injury that occurred, in whole or in part, during the Policy period.

17.     While the Policy contains a trademark/copyright exclusion, the exclusion "does not apply to infringement, in your 'advertisement,' of copyright, trade dress or slogan." The Policy defines "advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." At a minimum, the T-shirts that allegedly infringed on Ashenoff's copyright were promotional items allegedly created, marketed and sold by TNA as part of a broader marketing and promotional strategy. Thus the copyright infringement was alleged to occur in the course of an "advertisement."

18.     Nor does the Entertainment Industry Exclusion in the Policy bar coverage. It provides:

> This policy does not apply to **Personal Injury** or **Advertising Injury** arising out of the development, creation, pre-production, production, post-production, distribution, exploitation, writing, broadcasting, airing, performing or exhibition of films, television/cable programs, radio programs, stage plays, video/audio cassettes, music, sheet music, computer programs, books or other similar materials, and properties.

This exhaustive exclusion does not list alleged advertising injury related to T-shirts or advertising/promotional items. Therefore it does not exclude Ashenoff's copyright claims from coverage.

19.     The Policy contains an Entertainment Errors and Omissions Exclusion that excludes coverage for, among other things, "2. Advertisers' errors and omissions liability" and "5. Loss arising from any publication or literature including any musical material conducted or composed by or on behalf of the Named Insured." The meaning of "[a]dvertisers' errors and omissions liability" is ambiguous, undefined by the Policy, and appears irrelevant to Ashenoff's copyright claims. "Loss," while also undefined by the Policy, generally refers to *indemnification*

only. Thus, the Entertainment Errors and Omissions Exclusion does not limit Clarendon's duty to *defend* against claims arising from publication.

20. TNA settled the Ashenoff Counterclaim, but incurred significant defense costs.

21. TNA timely notified Clarendon of the Ashenoff Counterclaim. TNA has satisfied all Policy conditions.

22. TNA demanded that Clarendon honor its insurance contract by paying TNA's defense costs. However, despite the coverage provided by the Policy, Clarendon has refused to pay any portion of the defense costs.

V.

CAUSES OF ACTION

A. **Count One – Breach of Contract**

23. The foregoing paragraphs are incorporated herein by reference.

24. The Clarendon Policy is a valid, enforceable contract.

25. The Policy unambiguously covers defense costs or, alternatively, is ambiguous and thus is to be construed in favor of coverage. Therefore, Clarendon is obligated to reimburse TNA for costs incurred in defending the TNA insureds against the Ashenoff Counterclaim.

26. Clarendon has breached its contract with TNA by refusing to pay TNA's costs incurred in defending the Ashenoff Counterclaim.

27. By breaching its contract with TNA, Clarendon has proximately caused damages to TNA in excess of this Court's minimum jurisdictional limits.

B. **Count Two – Violations of Chapter 542 of the Texas Insurance Code**

28. The foregoing paragraphs are incorporated herein by reference.

29. TNA has made claims in connection with the Ashenoff Counterclaim under the Clarendon Policy. TNA's claims for coverage are first-party claims.

30. Clarendon's refusal to pay defense costs violates the Prompt Payment Statute in Chapter 542 of the Texas Insurance Code.

31. Thus, TNA is entitled to the damages set forth in § 542.060 of the Texas Insurance Code including, in addition to the amount of TNA's claim, 18 per cent per annum of the claim amount and any and all other relief provided therein.

**C.  Count Three – Attorneys' Fees**

32. The foregoing paragraphs are incorporated herein by reference.

33. Clarendon's breach of the insurance contract and violations of the Texas Insurance Code have forced TNA to retain the law firm of Haynes and Boone, LLP of Dallas, Texas. TNA has agreed to pay Haynes and Boone a reasonable fee for its services necessarily rendered and to be rendered in this action. Under § 38.001 of the Texas Civil Practice and Remedies Code and/or § 542.060 of the Texas Insurance Code, TNA is entitled to recover its reasonable and necessary attorneys' fees and expenses incurred as a result of Clarendon's actions.

## VI.

## JURY DEMAND

34. Pursuant to Texas Rule of Civil Procedure 216, TNA hereby demands a jury trial in this matter and hereby pays the required jury fee.

## VII.

## REQUEST FOR DISCLOSURE

35. Pursuant to Rule 194 of the Texas Rules of Civil Procedure, TNA requests Clarendon to disclose, within fifty (50) days of service of this request, the information or material described in Rule 194.2(a)-(l).

## VIII.

## PRAYER

WHEREFORE, TNA respectfully requests that this Court enter judgment in TNA's favor, awarding TNA (1) its actual damages, (2) statutory damages, (3) its attorneys' fees and expenses, (4) costs of court, (5) pre- and post-judgment interest at the highest rate allowed by law, and (6) all such other and further relief to which it may be justly entitled.

Respectfully submitted,

*/s/ Ernest Martin, Jr.*

Ernest Martin, Jr.
State Bar No. 13063300
John M. Bunting
State Bar No. 24073974

HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

ATTORNEYS FOR PLAINTIFF
TNA ENTERTAINMENT, LLC

D-1920877_4.DOC